UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| FLINT CPS INKS NORTH AMERICA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TREND OFFSET PRINTING SERVICES, INC. and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:20-cv-00208-MMD-CLB<br><br>ORDER |

Plaintiff Flint CPS Inks North America, LLC as successor in interest to Flint Group North America Corporation ("Flint Group") has filed a motion for writ of possession pursuant to NRS § 31.840, *et seq.* and Fed. R. Civ. P. 64 and seeks emergency relief ("Motion") (ECF No. 3.) As to the latter, Flint Group specifically requests that the Court issues an *ex parte* temporary restraining order ("TRO") restraining Defendant Trend Offset Printing Services, Inc. ("Trend Offset") from using, dissipating, transferring, or otherwise disposing of printing ink and related materials ("Consigned Goods") which Flint Group alleges it owns.[1] (*Id.* at 2, 10–11.) The Court finds that Flint Group fails to meet the heavy burden of showing that it is entitled to the extreme relief of an *ex parte* TRO and will therefore deny its request for such.

Federal Rule of Civil Procedure 65 governs *ex parte* TROs, and requires that a motion for a TRO without notice include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it

///

---

[1] Perhaps by error, the emergency relief is requested pursuant to both Cal. Civ. Proc. Code § 513.010(b) and NRS § 31.859. (ECF No. 3 at 2, 10–11.)

should not be required." Fed. R. Civ. P. 65(b)(1). TROs are governed by the same standard applicable to preliminary injunctions. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F. 3d 832, 839 n.7 (9th Cir. 2001). A TRO may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has also held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

Flint Group has not satisfied the requirements for a TRO. Here, Flint Group contends that a TRO is necessary based on the language in NRS § 31.859. (ECF No. 3 at 10.) That section is titled: "Temporary restraining order in lieu of immediate issue of writ of possession." *See* NRS § 31.859. It specifically states that a "court may issue such temporary restraining orders directed to the defendant prohibiting such acts with respect to the property as may appear necessary for the preservation of rights of the parties and the status of the property." *Id.* Nothing in this section suggests that Flint Group is excused from demonstrating that a TRO is necessary per a showing of the *Winters* factors, which Flint Group completely fails to argue here.

To be sure, applying the *Winter* factors, it is not clear what irreparable harm, if any, would occur absent a TRO. In fact, it appears that compensatory relief would ultimately be adequate in this action—as highly suggested by the admitted filing of a similar, and apparently principal, action in in the United States District Court for the Central District of California requesting such relief (*see, e.g.*, ECF No. 3 at 4 n.1; ECF No. 1 at 4 n.2). *See Flint CPS Inks N. Am., LLC v. Trend Offset Printing Servs., Inc.*, Case No. 8:20-cv-00651 (C.D. Cal., filed April 2, 2020). Of course, the adequacy of compensatory relief weighs heavily against a finding of irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974). There is also no actual evidence that Trend Offset has specifically threatened to

use, dissipate, transfer, or otherwise dispose of the Consigned Goods as the basis for the TRO suggests. The letter from Trend Offset's counsel, which Flint Group appears to find threatening, merely purports to bar Flint Group from entering Trend Offset property to retrieve the Consigned Goods in the interim and under the threat of potential civil and/or criminal penalty. (*See* ECF No. 1-8.)

Based on the Motion, it is also unclear whether Flint Group will be able to satisfy the other *Winter* factors: it has not demonstrated a likelihood of success on its relevant claim and delivery allegations (ECF No. 1 at 8–9),[2] or that the equities and the public interest would favor a TRO. *See Winter*, 555 U.S. at 20. Because Flint Group has not established the *Winter* factors, it has not shown it is entitled to a TRO, let alone without notice to Trend Offset.

It is therefore ordered that Flint Group's motion for a temporary restraining order (ECF No. 3) is denied. The Court defers a ruling on the writ of possession until that issue is fully briefed.

DATED THIS 7th day of April 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Particularly concerning for the Court is whether Flint Group would be able to establish NRS § 31.850(1)'s requisite showings in light of the disjunctive language in the contract that Flint Group relies on to argue that it owns the Consigned Goods. Specifically, the contract provides:

> Ownership. Flint Group shall continue to be the owner of the Consigned Goods and hold legal title to same until such time as the earlier of when Purchaser *uses* the Consigned Goods *or* pays Flint Group in full for them. Purchaser shall not pledge or grant any security interest in or to the Consigned Goods unless and until they have been purchased by Purchaser.

(ECF No. 1-3 at 3 §1.3(b) (emphasis added).) This language suggests that Trend Offset may very well own the Consigned Goods, so long as it uses it, and then all that is left is for Flint Group to be compensated for such use. But NRS § 31.850(1) specifically requires that Flint Group must show that it is the owner of the property claimed or that it is lawfully entitled to the possession of it. However, the Court is not fully convinced that this showing is likely met in light of the contractual language and the uncertainty of what remains of the Consigned Goods.

3